UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORRI A. WESOLOWSKI,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>    Defendant. | No. CV-06-232-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on April 23, 2007. (Ct. Rec. 16, 20). Lorri Wesolowski ("Plaintiff") filed a reply brief on April 16, 2007. (Ct. Rec. 22). Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney David M. Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 5). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 20) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 16).

## **JURISDICTION**

On October 1, 2002, plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and for SSI, alleging disability since February 27, 2000, due to fibromyalgia,

- 1 -

chronic fatigue syndrome, arthritis, cervical spine fusion, patellofemoral syndrome, and arrhythmias. (Administrative Record ("AR") 65, 77, 109). The applications were denied initially and on reconsideration. Plaintiff's request for a hearing was filed late, but the Administrative Law Judge ("ALJ") Mary Bennett Reed found that Plaintiff established good cause for the late filing. (AR 20). At a hearing held on January 11, 2005, Plaintiff, her spouse, and vocational expert Tom Moreland testified. (AR 694-741). The ALJ issued a decision finding that plaintiff was not disabled on September 19, 2005. (AR 17-33). The Appeals Council denied a request for review on June 29, 2006. (AR 6-8). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on August 17, 2006. (Ct. Rec. 1).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both plaintiff and the Commissioner and will only be summarized here. Plaintiff was 45 years old on the date of the decision, has a high school education and an associate's degree, and has past work experience as a purchasing manager, power sewing machine operator, and bundle runner. (AR 78, 83, 101, 698, 738).

Plaintiff testified that she is unable to work due to fibromyalgia, chronic pain, chronic fatigue, and a disc fusion after a 1989 neck injury. (AR 699). She has no range of motion in her neck, her shoulders and arms get numb, and they hurt all the time. (AR 699). She has fifty percent range of motion in her neck in any direction. (AR 710). Plaintiff is tired all the time, has pain in her hips and feet, nausea, and is unable to function without medication. (AR 700). She saw Dr. Butler in January or February of 2000, and he did not diagnose fibromyalgia; however, Dr. Hindman diagnosed both fibromyalgia and chronic fatigue syndrome. (AR 701-702). Plaintiff can sit for 20 minutes before her knees or ankles start to swell, a problem she has experienced for ten years. (AR 702). Her hands ache all the time. (AR 704). In the year preceding the hearing, plaintiff was unable to play guitar or keyboard, or write. (AR 705). Between 15 and 20 days a month, plaintiff is unable to get out of bed. (AR 706). Her activities

include washing dishes, laundry (carried by someone else down the stairs), and dusting. (AR 711). Side effects from medications include drowsiness, dizziness, nausea, memory loss and sleep disturbance. (AR 712). Plaintiff has not driven since 1989 or 1990 due to dizzy spells and medication,. (AR 712). She last walked in the Bloomsday race prior to 1997.[1] (AR 726).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if plaintiff is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§

---

[1] But plaintiff reported she walked in that race in 2001 and 2002. (AR 23-24, referring to Exhibit 20F); see page 10 herein.

- 3 -

404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing past work. If plaintiff is able to perform this previous work, plaintiff is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents engaging in a previous relevant occupation. The burden then shifts to the Commissioner to show (1) that plaintiff can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction ("DAA") is not a contributing material factor to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when DAA is a contributing factor material to a disability claim. 42 U.S.C. §§ 423 (d)(2)(C) and 1382 (a)(3)(J); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998). If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether the DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether DAA is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs. *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir. 2001).

## **STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of an ALJ's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [ALJ's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [ALJ] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the ALJ. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the ALJ is conclusive. *Sprague v. Bowen*, 812 F. 2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

As a preliminary matter, the ALJ noted that plaintiff earned sufficient quarters of coverage to remain insured for DIB purposes through the date of the decision, September 19, 2005. (AR 32). At step one the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset date, February 27, 2000. (AR 21, 32). At steps two and three, the ALJ determined that plaintiff has the severe impairments of fibromyalgia, left knee impairment, post-cervical fusion, and narcotic dependence, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listed impairments. (AR 30, 32). The ALJ found that plaintiff's cardiac impairment is not severe. (AR 30).

After finding her less than completely credible, the ALJ concluded that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work and the full range of sedentary work. (AR 27-29, 31). The ALJ found that plaintiff can lift 10 pounds occasionally and sit, stand and/or walk 6 hours out of an 8 hour day. (AR 31). The ALJ assessed several physical non-exertional limitations, such as avoiding work requiring concentrated exposure to hazards or dangerous machinery. (AR 31).

At step four of the sequential evaluation process, the ALJ found that, based on plaintiff's RFC and the vocational expert's testimony, plaintiff could perform her past relevant work as a purchasing manager. (AR 31-32). After finding that plaintiff could perform her past relevant work, the ALJ was not required to proceed to step five. The ALJ found that plaintiff was not disabled within the meaning of the Social Security Act. (AR 32-33). Because she found plaintiff was not disabled, the ALJ did not conduct the *Bustamante* analysis.

## ISSUES

Plaintiff contends that the ALJ erred as a matter of law. Specifically, plaintiff argues that:

1. The ALJ erred by failing to properly credit the opinions of plaintiff's treating and examining physicians;

2. The ALJ failed to properly weigh the lay testimony; and

3. The ALJ failed to conduct an adequate step four analysis.

- 6 -

(Ct. Rec. 18 at p. 10).

This court must uphold the ALJ's determination that plaintiff was not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. Weighing Medical Evidence**

Plaintiff argues that the ALJ erred by failing to properly weigh the opinions of her treating and examining physicians. (Ct. Rec. 18, pp. 12-15). Specifically, plaintiff contends that the ALJ erred by: (1) failing to include chronic fatigue syndrome or significant fatigue in her RFC, despite treating physician Keith L. Hindman, D.O.'s diagnosis; (2) rejecting examining physician Dr. Rubin's opinion that plaintiff could not stand and/or walk more than 2-4 hours in an 8 hour day, and (3) rejecting examining physician Dr. Bone's opinion that plaintiff has severe pain in both knees that is exacerbated by prolonged sitting. The Commissioner responds that the ALJ properly resolved the conflicting medical evidence. (Ct. Rec. 21 at 7).

A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). To reject the opinion of a treating or examining physician the ALJ must have evidence to support the decision such as laboratory test results, contrary reports from other physicians of record, or testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews,* 53 F.3d 1042-43.

The ALJ considered the assessment of treating physician Keith Hindman, D.O., that plaintiff suffered from chronic fatigue syndrome ("CFS") or significant fatigue. (AR 22). Plaintiff first saw Dr. Hindman on March 20, 2000, and reported that she had a five year history of migratory pain and swelling, particularly involving her knees, with constant pain in her neck. (AR 364-365). Plaintiff related that she started having problems with numbness in her hands and a lot of pain in her back a few months earlier. (AR 364). Dr. Hindman assessed fibromyalgia, cervical

and thoracic pain, a mass on plaintiff's right breast, and suspected CFS. (AR 363).

The ALJ gives three specific reasons for discrediting Dr, Hindman's CFS diagnosis: (1) Dr. Hindman observed on May 1, 2000, that subsequent laboratory testing for CFS was non-conclusive.  (AR 22, referring to AR 379).  (2) In February of 2004, plaintiff underwent a cardiac evaluation and denied suffering from fatigue.  (AR 26, referring to AR 677).  (3) When plaintiff presented disability forms to Dr. Hindman in November of 2004, he reported that plaintiff's disability "stems from a cervical fusion and post traumatic fibromyalgia;" CFS is not assessed. (AR 27, referring to Exhibit 20F at AR 651).

The ALJ additionally relied on other medical evidence and on plaintiff's credibility when she weighed Dr. Hindman's opinions.  She notes that Dr. Hindman prescribed oxycontin despite her addiction to prescription medications, and added soma within a month .  (AR 22).   The ALJ noted that in April of 2001, plaintiff reported that she continued to improve.  (AR 23).  Plaintiff advised that she had "some difficulties upon arising, 'but when she gets going she does well.'" (AR 23, referring to AR 475).  The ALJ referenced  Dr. Hindman's April 30, 2001, progress note: "There is no evidence of progression.  No significant medication side effects . Medical consultation is not medically indicated. . . . Her functional status has im[roved both subjectively and objectively.  Even though she is not working outside the home.  She is a mother and this is choice."  (AR 23, citing Exhibit 20 at 117, which is AR 478).

The ALJ relied on plaintiff's statement on May 30, 2001, that she is able to: "1) Walk in Bloomsday (over 7 miles); 2) walk up and down my basement stairs; 3) stand up for 1-2 hours to play my guitar or keyboard; 4) sit at my computer for up to 3 hours; 5) sleep 4-5 hours at a time at night; 6) gained 15 pounds because I can eat (1st time in 15 years); 7) vacuum my house; 8) stand and bend to do dishes (to put in dishwasher); 9) drive a car with a clutch; 10) stand in the shower to shave my legs; 11) lay in the tanning bed; 12) turn and look behind me while driving, etc."  (AR 23, citing Exhibit 20F).  The ALJ noted that plaintiff failed to show for a consultative rheumatological appointment with Dr. John Stevens on December 17, 2001.  (AR 23, citing Exhibit 20F at 174, which is AR 535).  On December 27, 2001, the ALJ observes that plaintiff again failed to show for a consultative rheumatological appointment, this time with Dr. Jeffrey

Butler. (AR 23, referring to Exhibit 27F, which is AR 682-683).

On November 10, 2001, plaintiff reported to Dr. Hindman that she had been looking for a job, wearing heels all day, and climbing in and out of her truck. (AR 520). The ALJ indicated that plaintiff reported on December 28, 2001, that she was now able to work. (AR 23, referring to Exhibit 20F). In January of 2002 plaintiff continued to report improved functional abilities: she could play guitar, keybord or piano, walk daily, work, drive, type a long email message and write letters. (AR 23-24, referring to Exhibit 20F at 189).

The ALJ noted that Dr. Hindman referred plaintiff to orthopedic specialist Craig Bone, M.D., who interpreted x-rays in September of 2001, as revealing no evidence of arthritic changes. The Merchant's view revealed an incongruent patellofemoral joint and Dr. Bone diagnosed bilateral knee pain secondary to patellar incongruency and subluxation. (AR 24, citing AR 668). He referred plaintiff to physical therapy, and she did not see Dr. Bone again. (AR 24). (In 2003, plaintiff was discharged from physical therapy after eight sessions. AR 230). The ALJ observed Dr. Bone's opinion that plaintiff took as much pain medication as a person dying of cancer. (AR 24, citing AR 614).

The ALJ relied on the opinion of physician Diane Rubin, M.D., following her examination on January 21, 2003. (AR 25, citing AR Exhibit 10F which is AR 151-155). Dr. Rubin points out plaintiff's statement that she began having symptoms of fibromyalgia and CFS in the late 1980's. (AR 151). Plaintiff described how, after an injury sustained in a car accident, she underwent a C6-7 fusion in 1989, and it helped her neck pain significantly. (AR 151). Plaintiff began yoga three weeks before Dr. Rubin's exam, for 45 minutes three times a week, and noted it already helped her flexibility. (AR 151). Plaintiff described complete resolution of her shoulder bursitis after a second injection. (AR 152). Dr. Rubin included plaintiff's diagnosis of patellofemoral syndrome based on self-report, but indicated that she (Dr. Rubin) did not have these records. (AR 152). Plaintiff's activities included painting, sewing, playing guitar and piano, and the ability to walk comfortably three miles on flat ground. (AR 152). Plaintiff stopped driving two and a half years earlier because her husband was concerned about her driving while on "heavy medication." (AR 152). Dr. Rubin did not diagnose but reported a history of fibromyalgia, CFS, patellofemoral

syndrome, mild degenerative changes of the thoracic spine, and possibly carpal tunnel syndrome. (AR 155).  After her exam, Dr. Rubin opined that plaintiff could stand or walk 2-4 hours out of 8, sit for 6 out of 8 hours, and could probably lift 10 pounds occasionally.  (AR 155).

In addition to the non-conclusive testing results for CFS, the ALJ considered plaintiff's credibility when weighing Dr. Hindman's opinion.  The ALJ found plaintiff less than completely credible for a variety of reasons, including activities inconsistent with the degree of impairment alleged and plaintiff's statements which were contradicted by the medical record.  (AR 27-29). The ALJ notes that on May 30, 2001, and again in June of 2002, plaintiff reported that she was able to walk in the Bloomsday race (over seven miles). (AR 23-24).  Also in May of 2001, the ALJ observes plaintiff's report that she could stand for 1-2 hours to play guitar or keyboard; sit at her computer for up to 3 hours, and drive a car with a manual transmission.  (AR 23).  The ALJ points out that plaintiff has reported going hiking and camping, volunteering at her son's school, and caring for her children and grandchildren.  (AR 28).

The ALJ notes that plaintiff's statements are contradicted by the medical record.  (AR 28). Plaintiff reported that she was terminated from her job after having been hospitalized for a week; the medical record indicates that plaintiff was treated in the emergency room and released the same day.  (AR 28, comparing Exhibit 1E with Exhibit 6F).  Plaintiff testified that she lost 50 percent range of motion in her neck; the ALJ observes that this is not supported by examination results.  (AR 28).  Plaintiff's reports of incapacity are inconsistent with treadmill results reflecting normal exercise tolerance.  (AR 29).  Plaintiff reported she was not offered a knee immobilizer or crutches at the emergency department; the ALJ indicates that, according to the emergency room notes (AR 681),  plaintiff refused an immobilizer.  (AR 29).

The ALJ relied on specific and legitimate reasons supported by substantial evidence when she weighed Dr. Hindman's previous diagnosis of CFS or chronic fatigue.

The ALJ also considered Dr. Hindman's opinion that plaintiff was not employable.  (AR 30, referring to Exhibits 20F95 and 99).  The ALJ rejected this opinion because it was conclusory, not supported by any assessment of functional restrictions, and was inconsistent with Dr. Hindman's clinic and progress notes.  (AR 30).  The ALJ cites the inconsistent progress notes: (1)

plaintiff is able to walk, and, but for her shoulder pain, could do the dishes, scrub the tub, and clean out the basin (November 2000); (2) plaintiff was improving: her activities of daily living, family and social life had improved (December 2000); (3) plaintiff is unemployable and in need of further medical evaluation (January 2001); (4) further medical consultation is not medically indicated (April 30, 2001, Exhibit 20); and (5) plaintiff is not working outside the home by choice. (AR 30, citing Exhibit 20F at 117).

The ALJ opines that the significant conflict between Dr. Hindman's progress notes and his conclusion that plaintiff is unemployable indicates that Dr. Hindman adopted the role of advocate, and his opinion was not based on the medical evidence. (AR 30). Dr. Hindman's notes reflect that in November of 2001 plaintiff has been looking for a job. (AR 52). On January 26, 2002, Dr. Hindman described plaintiff as in "no acute distress sitting comfortably in the chair." (AR 549). On June 8, 2002, Dr. Hindman noted that plaintiff's pain management was very good (AR 587) and that plaintiff's functional status and activities have improved both subjectively and objectively. (AR 588). This was noted again in August, September, and Ocotber of 2002. (AR 605, 615, 618). In August of 2002, plaintiff reported she "slept in a tent" in a "sleeping bag on vacation." (AR 613). Plaintiff reported on November 18, 2002, that she plays "guitar and piano, cleans house, drive(s), goes for walks" and went camping. (AR 625). On January 3, 2003, plaintiff reported to Dr. Hindman that she "feel(s) good (sic) everything going well." (AR 632). On January 11, 2003, Dr. Hindman indicated plaintiff would not be able to work without opioid-based medicinal pain management. (AR 633). On October 19, 2004, Dr. Hinman's notes reflect plaintiff stated "she is doing well." (AR 645).

The medical evidence contradicting Dr. Hindman's assessment of unemployability is outlined above. The ALJ considered all of the medical evidence, as well as plaintiff's credibility, when she weighed Dr. Hindman's opinion. To the extent that the ALJ rejected Dr. Rubin's opinion that plaintiff could not stand and/or walk more than 2-4 hours in an 8 hour day, any error

is harmless because plaintiff's past relevant work as a purchasing manager is sedentary.[2]

Plaintiff contends that the ALJ improperly rejected examining physician Dr. Bone's opinion that she has severe pain in both knees that is exacerbated by prolonged sitting.  As the Commissioner points out, Dr. Bone's notation refers to plaintiff's subjective complaints rather than a diagnosis. (Ct. Rec. 21 at 11, referring to AR 667-668).  Even if Dr. Bone assessed such a limitation, plaintiff's stated ability to sit at a computer for three hours undercuts the claimed impairment.

The ALJ's finding that plaintiff was able to work at the sedentary level is fully supported by the medical evidence of record and by plaintiff's statements to medical providers.

**B. Weighing Lay Testimony**

Plaintiff contends that the ALJ improperly discounted the testimony of her spouse. (Ct. Rec. 18, pp. 15-17).  The Commissioner responds that the ALJ properly weighed the lay testimony and gave germane reasons for rejecting it. (Ct. Rec. 21, pp. 6, 11-12).

An ALJ may not ignore or reject lay testimony without providing reasons, supported by substantial evidence, that are germane to each witness. *See Dodrill v. Shalala*, 12 F. 3d 915, 919 (9th Cir. 1993). The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).

The ALJ weighed Mr. Wesolowski's testimony:

> He testified that he did the cooking, but he also testified he was required to purchase an entirely new set of pots and pans for the claimant because she was unable to use the cast iron pans.  His statement that the claimant's medications cause significant cognitive problems is inconsistent with the claimant's repeated reports to her treating physician that she was not experiencing side effects.  However, his statement is consistent with a report of occasional overuse of medication.  While his statements have been considered, the close relationship between the claimant and her husband and the possibility

---

[2] An error is harmless when the correction of that error would not alter the result. *See Johnson v. Shalala*, 60 F. 3d 1428, 1436 n. 9 (9th Cir. 1995).  Further, an ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005) (*citing Curry v. Sullivan*, 925 F. 2d 1127, 1131 (9th Cir. 1991).

> that his statements were influenced by his desire to help the claimant cannot be entirely ignored in deciding how much weight to accord the statements. Further, his statements are influenced by, if not based on, the claimant's report of symptoms, and the claimant is not credible.

AR 29.

The ALJ is correct that at least some of Mr. Wesolowski's opinion is based on plaintiff's unreliable self reporting. When asked at the hearing about his observations of plaintiff, he replied:

"as far as my observance, she tells me she's in pain." (AR 733). Because at least some of the opinion was based on plaintiff's unreliable self-report, the ALJ was entitled to give it little weight.

The ALJ's observation that the lay testimony with respect to medication side effects is inconsistent with the medical evidence is also supported by the record. (*e.g.,* AR 212) (only noted adverse side effect of medication is mild constipation). These are both legitimate reasons supported by substantial evidence. The ALJ properly evaluated the lay testimony and gave legitimate reasons supported by substantial evidence for rejecting the opinion to the extent that it was not supported by medical evidence and was based on plaintiff's unreliable self-report.

**C.     Ability to Perform Past Relevant Work**

Plaintiff contends that the ALJ erred by finding that she could perform her past relevant work as a purchasing manager. (Ct. Rec. 18, pp. 17-20). The Commissioner responds that the ALJ complied with the requirements of S.S.R. 82-62 by relying on the vocational expert's testimony. (Ct. Rec. 21 at 12-13).

The ALJ based plaintiff's residual functional capacity assessment on the credible medical evidence and on plaintiff's extensive physical activities. Because plaintiff was able to perform a full range of work at the sedentary level, and the vocational expert opined that her past relevant work as a purchasing manager is sedentary (AR 738-739), the ALJ properly relied on this testimony to determine that plaintiff was not disabled. Although the ALJ determined that plaintiff suffers from narcotic dependence, because she was found not disabled, the ALJ properly did not conduct the *Bustamante* analysis.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision,

1 that plaintiff was capable of performing her past relevant work as a purchasing manager, is
2 supported by substantial evidence and free of legal error.  Plaintiff is thus not disabled within the
3 meaning of the Social Security Act.  Accordingly,

4 **IT IS ORDERED**:

5     1.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) is **DENIED**.

6     2.    Defendant's Motion for Summary Judgment (**Ct. Rec. 20**) is **GRANTED**.

7     3.    The District Court Executive is directed to enter judgment in favor of
8 Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this
9 file**.**

10     **DATED** this 24th day of April, 2007.

12                                           s/Michael W. Leavitt
                                              MICHAEL W. LEAVITT
13                                        UNITED STATES MAGISTRATE JUDGE